J-A10031-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| J.T.H., Jr. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| H.H., n/k/a H.W., | |
| Appellant | No. 1960 MDA 2014 |

Appeal from the Order entered July 28, 2014,
in the Court of Common Pleas of Lancaster County,
Civil Division, at No(s): CI-13-06575

BEFORE:  GANTMAN, P.J., MUNDY, and JENKINS, JJ.

MEMORANDUM BY JENKINS, J.:                    **FILED DECEMBER 07, 2015**

H.H., n/k/a H.W. ("Mother"), appeals from the custody order dated July 25, 2014, and entered on July 28, 2014, that awarded J.T.H., Jr. ("Father") and Mother shared legal and physical custody of their minor male child, M.E.H., (born in July of 2001), and their minor female child, C.M.H., (born in December of 2004) (collectively, "the Children").  Upon careful review, we affirm.

We summarize the factual and procedural history of this case as follows.  Mother and Father are the natural parents of the Children.  Mother and Father divorced in 2011.  Mother is currently married to J.W., the Children's stepfather ("Stepfather"), with whom she recently had a son, S.W. ("Half-Brother"), in April of 2014.  Mother lives in a six-bedroom house in Strasburg, Pennsylvania, with the Children, Stepfather, Half-Brother, the

Children's paternal uncle, and the Children's maternal grandmother. Prior to giving birth to Half-Brother, Mother worked as a server at Red Lobster, but is now a stay-at-home caretaker.

Father is currently married to F.H., the Children's stepmother ("Stepmother"). Father lives in a three-bedroom townhouse in Lancaster, Pennsylvania, with the Children, Stepmother, and Stepmother's children. Father works as a certified nurse's aide from 3:00 p.m. to 11:00 p.m. with a two-week rotating work schedule. Based on his work schedule, Father is off on Sunday, works Monday through Thursday, is off on Friday, works Saturday through Monday, is off on Tuesday, works Wednesday through Friday, and is off on Saturday.

On June 28, 2013, Father filed an initial *pro se* complaint in custody, seeking primary physical custody of the Children. Thereafter, the parties submitted their criminal history affidavits. Mother indicated that Stepfather committed an enumerated offense. Consequently, the trial court conducted a risk of harm hearing on August 5, 2013. After the risk of harm hearing, the trial court found Stepfather was not a risk of harm to the Children.

The matter proceeded to trial because the parties could not reach an agreement on the issue of custody at the custody conciliation conference held on August 28, 2013. Prior to trial, the custody conciliator entered a temporary custody order on September 10, 2013, granting primary physical custody to Mother and partial physical custody to Father. The trial court

held a custody hearing on October 21, 2013. On November 7, 2013, the trial court entered a final custody order, awarding both parties shared legal and physical custody of the Children on a two-week rotating basis in order to accommodate Father's work schedule so he could maximize his custodial time with the Children on the days he has off. The two-week rotating basis was as follows:

> *Week One*- Monday from after school to Thursday at 5:00 p.m. with Mother;
> Thursday at 5:00 p.m. to Friday at 8:00 p.m. with Father;
> Friday at 8:00 p.m. to Monday at 5:00 p.m. with Mother.
>
> *Week Two*- Monday at 5:00 p.m. to Wednesday before school with Father;
> Wednesday after school to Friday at 5:00 p.m. with Mother;
> Friday at 5:00 p.m. to Monday before school with Father.

Trial Court Opinion, 11/7/13, at 6. The trial court ordered "Week One" to begin on Monday, November 11, 2013.

On April 11, 2014, Mother filed a petition to modify custody, seeking primary physical custody. On June 3, 2014, the parties attended a custody conciliation conference with the Children. On June 17, 2014, the custody conciliator issued a temporary custody order, granting primary physical custody to Mother and partial physical custody to Father on a similar, simplified two-week rotating basis.

On July 11, 2014, Father appeared *pro se* and Mother appeared with counsel at a custody hearing. At the custody hearing, the trial court heard the testimony of the Children, Father, Mother, the Children's maternal uncle,

and the Children's maternal aunt. By opinion and order entered July 28, 2014, the trial court awarded the parties shared legal and physical custody of the Children, on a two-week rotating basis and ordered co-parent counseling. The trial court ordered the two-week rotating basis to give Father custody of the Children on his days off during his two-week schedule as follows:

> *Week One-* Father shall have custody of the Children from after school on the Tuesday he has off from work until Monday after school.

> *Week Two-* Mother shall have custody of the Children from after school on Monday until the Tuesday of Week One after school.

Trial Court Opinion, 7/28/15, at 8.[1]

On August 28, 2014, Mother filed a notice of appeal, which this Court quashed as untimely filed on October 9, 2014. On October 20, 2014, Mother filed a petition to appeal *nunc pro tunc* from the custody order of July 28, 2014. The trial court entered an order on November 13, 2014, granting Mother's petition to appeal *nunc pro tunc*. On November 19, 2014, Mother filed a notice of appeal *nunc pro tunc*, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

On August 19, 2015, this Court remanded with instructions that the trial court author a more complete Pa.R.A.P. 1925(a) opinion addressing all

---

[1] The trial court's order and opinion specified further custody details including custody start times and holiday and vacation schedules, which we need not reproduce here.

- 4 -

J-A10031-15

required custody factors. On August 25, 2015, the trial court filed a new

Pa.R.A.P. 1925(a) opinion as directed.[2, 3]

On appeal, Mother presents the following issues for our review:

1. Did the [t]rial [c]ourt err in that it did not give adequate consideration to the well-reasoned preference of the [C]hildren to maintain Father's every other weekend custody schedule?

2. Did the [t]rial [c]ourt err in its determination that a shared custody schedule is appropriate where Father is not available for three of the six days during his period of custody and Mother is not working?

3. Did the [t]rial [c]ourt err in its determination that a shared custody schedule is appropriate when Father does not encourage and permit [ ] continued contact between the [C]hildren and Mother during his periods of custody?

4. Did the [t]rial [c]ourt err in that it did not give adequate consideration to the strong relationship that the [C]hildren share with [Half-Brother] in Mother's home?

5. Did the [t]rial [c]ourt err in its determination that a shared custody schedule was appropriate when Father is not flexible with Mother when it comes to issues of co-parenting?

Mother's Brief at 14.

---

[2] A clerical error in the Lancaster County Court of Common Pleas' prothonotary's office prevented the trial court's new Pa.R.A.P. 1925(a) opinion from being forwarded to this Court until November of 2015.

[3] The trial court's new Pa.R.A.P. 1925(a) opinion includes a new custody order dated August 25, 2015. Ordinarily, the issuance of a new order would reset an appeals period and require appeal of the new order. However, given the clerical miscues involved in this matter, and because the trial court's new order is nearly identical to the July 28, 2014 order (the new order omits a prior co-parent counseling requirement that has no bearing on our determination herein), we will consider Appellant's August 28, 2014 notice of appeal of the original order applicable to the August 25, 2015 order attached to the new Pa.R.A.P. 1925(a) opinion.

In custody modification cases, our standard of review is as follows:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*C.R.F. v. S.E.F.*, 45 A.3d 441, 443 (Pa.Super.2012) (citation omitted).

We have stated:

> [t]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa.Super.2006) (*quoting Jackson*

*v. Beck*, 858 A.2d 1250, 1254 (Pa.Super.2004)).

In *M.A.T. v. G.S.T.*, 989 A.2d 11 (Pa.Super.2010) (*en banc*), we

stated the following regarding an abuse of discretion standard:

> Although we are given a broad power of review, we are constrained by an abuse of discretion standard when evaluating the court's order. An abuse of discretion is not merely an error of judgment, but if the court's judgment is manifestly unreasonable as shown by the evidence of record, discretion is abused. An abuse of discretion is also made out where it appears from a review of the record that there is no evidence to

support the court's findings or that there is a capricious disbelief of evidence.

*Id.* at 18-19 (quotation and citations omitted).

With any custody case decided under the Child Custody Act ("Act"), the paramount concern is the best interests of the child. *See* 23 Pa.C.S. §§ 5328, 5338.

Section 5323 provides for the following types of awards:

**(a) Types of award.—**After considering the factors set forth in section 5328 (relating to factors to consider when awarding custody), the court may award any of the following types of custody if it in the best interest of the child:

(1) Shared physical custody.

(2) Primary physical custody.

(3) Partial physical custody.

(4) Sole physical custody.

(5) Supervised physical custody.

(6) Shared legal custody.

(7) Sole legal custody.

23 Pa.C.S. § 5323.

Section 5338 of the Act provides that, upon petition, a trial court may modify a custody order if it serves the best interests of the child. 23 Pa.C.S. § 5338. Section 5328(a) of the Act sets forth the sixteen best interest factors that the trial court must consider. *See* 23 Pa.C.S. § 5328(a); *see also E.D. v. M.P.*, 33 A.3d 73, 80-81, n.2 (Pa.Super.2011).

Section 5328(a) provides as follows:

**§ 5328. Factors to consider when awarding custody**

**(a) Factors.--**In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

In **A.V. v. S.T.**, 87 A.3d 818 (Pa.Super.2014), this Court explained the

following:

> "**All** of the factors listed in section 5328(a) are required to be considered by the trial court when entering a custody order." **J.R.M. v. J.E.A.,** 33 A.3d 647, 652 (Pa.Super.2011) (emphasis in original). . . . The record must be clear on appeal that the trial court considered all the factors. **Id.**
>
> Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.[] § 5323(d). Additionally,

"section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328 custody] factors prior to the deadline by which a litigant must file a notice of appeal." *C.B. v. J.B.,* 65 A.3d 946, 955 (Pa.Super.2013), *appeal denied,* [] 70 A.3d 808 ([Pa.]2013). Section 5323(d) applies to cases involving custody and relocation. *A.M.S. v. M.R.C.,* 70 A.3d 830, 835 (Pa.Super.2013).

In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." *M.J.M. v. M.L.G.,* 63 A.3d 331, 336 (Pa.Super.2013), *appeal denied,* [] 68 A.3d 909 ([Pa.]2013). A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). *Id.*

*A.V.*, 87 A.3d at 822-23.

With regard to the section 5328(a) factors, the trial court found the following:

1. Which party is more likely to encourage and permit frequent and continuing contact between the child and another party. [M.E.H.] testified that he does not call to talk to [] Father while at Mother's house and that Father does not call to talk to the Children while they are at their Mother's home. He also believes that he does not talk to Mother over the phone while at Father's house because "If she calls, he doesn't really tell us." [C.M.H.] testified that when she is at her Father's house, she similarly does not speak to [] Mother on the phone. She states that the reason for this is that Mother calls Father early in the morning or late at night, when the Children are asleep. She also stated that Father does not call the Children at Mother's home and that they do not call him from Mother's home. The parties testified that their telephone communications leave much to be desired from a co-parenting standpoint as both Mother and Father have an affinity for pushing each other's buttons. It is this issue with communication that the [c]ourt sought to address when it ordered the parties to attend co-parenting counseling. While their communications are not ideal, in consideration of co-

parenting issues as a whole, the [c]ourt finds these conflicts to be minor. Further, the parties have generally been diligent to shield the Children from their communication issues. The parties' issues with telephone communication can be addressed with proper counselling. Neither party has withheld the [C]hildren from the other party[,] and [each has] demonstrated a history of encouraging frequent and continuing physical contact of the other party with the Children.

2. The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child of an abused party and which party can better provide adequate physical safeguards and supervision of the child. There is not a present risk to the Children of abuse by either party or any of their current household members.

2.1 The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services). There is no evidence of the involvement of child abuse or child protective services and none was presented at any hearing in this matter.

3. The parental duties performed by each party on behalf of the child. Both parents perform parental duties for the Children when they are in their custody; Mother relies on maternal grandparents when necessary.

4. The need for stability and continuity in the child's education, family life, and community life. The Children's need for stability and continuity in their education, family, and community life will be satisfied under a shared schedule[] because of the proximity of the parties' residences and because they will not be changing school districts[.]

5. The availability of extended family. Both maternal and paternal grandparents either live with or within a reasonable driving distance to see the Children. Moreover, both sets of grandparents and various aunts and uncles are available to the Children when the Children are at either Mother or Father's house.

6. The child's sibling relationships. The Children's relationship with each other as well as with their half-brother is healthy and

normal for their respective ages. Mother has a four-month-old Son, [S.W.]. Mother and the Children all testified that the Children enjoy bonding with their baby brother. Father also testified that he believes it to be important for the Children to know and develop meaningful relationships with both sides of their family, which includes the Children's newborn brother. It is not the [c]ourt's intent to disrupt the relationship that the Children have with their baby brother. The [c]ourt must consider all of the relevant child custody factors and not just this factor when making a custody determination. In a perfect world, Children would be able to spend 100% of the time with both parents and all siblings; however, when the circumstances are such that the Children are not part of an intact family, but instead have two blended households, the Children's time and other relational resources are divided. In consideration of all of the relevant child custody factors, the [c]ourt determines that a shared custody schedule, whereby both Children spend equal time at both households is in the best interests of the Children.

7. The well-reasoned preference of the child, based on the child's maturity and judgment. The well-reasoned preference of the Children, based on their maturity and judgment, is to not return to the custody schedule set forth by the [c]ourt in the November 6, 2013 Order. The main reason for this is because they feel like they had to go back and forth too often between Father's house, paternal grandparents' house, and Mother's house. The Children would like to maximize their time with their parents without having to go back and forth as often. The stated preference of the Children was to continue with the every other weekend schedule as set forth in the temporary custody order dated June 17, 2014. However, when asked why [M.E.H.] did not like the November 6, 2013 Order which provided for equal time with both parents, he stated specifically, "I don't really like going back and forth all the time, because it feels like I'll be here for, like two days, then I have to leave for a few days." He further stated to the [c]ourt that the biggest concern with the November 6, 2013 custody schedule was the "going back and forth all the time."

Under Pennsylvania child custody law, when there are two parents involved, the test as to the best interests of the Children is to evaluate on a scale that is initially weighed equally as to each parent. In the instant case, both Mother and Father are fit

parents. Both Mother and Father, despite their difficulties with each other, have an excellent and loving relationship with both of the Children. Here, the issue before the [c]ourt is not the best interests of the Children in shielding them from adverse effects from developing a relationship with their biological parents, but instead concerns logistical problems presented by Father's work schedule and childcare for the Children with paternal grandparents. It is upon the conclusion that both parents are fit, loving parents and that the Children do not like being carted back and forth many times during the week that the [c]ourt orders a shared custody schedule where Mother and Father essentially have a week on/week off schedule.

Both Children really enjoyed their weeks at the Black Rock Camp and want to go back again next year. [M.E.H.] enjoys Boy Scouts with his current troop down in Delta, PA and would like to continue participating with that troop. The [c]ourt finds that it is reasonable for [M.E.H.] to continue to participate in Boys Scouts in Delta, Pennsylvania with his uncle.

8. The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm. There was no evidence presented demonstrating any attempts of a parent to turn the Children against the other parent. Testimony was presented demonstrating that Father disparages Mother's home to the younger Child by attributing stupidity to verbal communications within Mother's household.

9. Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs. Both parties have demonstrated that they are likely to maintain a loving, stable, consistent, and nurturing relationship with the Children adequate for their emotional needs. The Children appeared to be well-balanced and happy children – a credit to both parents. The Children love both of their parents and benefit from continuing to develop their relationship with them under a shared custody schedule.

10. Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the Children. The Children have no special needs. Both parties have demonstrated that they are likely to attend to the daily physical,

emotional, developmental, and educational needs of the Children. The conflict over the Children's involvement with the Black Rock Camp, Boy Scouts of America, and other extracurricular activities is not because Father does not want the Children to participate in such activities. He testified credibly that he wants his Children to engage in various activities to be well-rounded and would not prevent the Children from [participating in] activities that they truly wanted to participate in. The parties' conflict regarding extracurricular activities is because the parties struggle to communicate effectively and respectfully with each other. These parental communication struggles will only hinder the Children's ability to freely engage in activities because either they will be chilled from asking about participating or they will ask but will be prevented from participating because of their parent's [sic] conflicts.

11. The proximity of the residences of the parties. The parties reside 22 miles apart. Father lives in Columbia[,] Pennsylvania, and Mother lives in Strasburg, Pennsylvania.

12. Each party's availability to care for the child or ability to make appropriate child-care arrangements. Both parties have demonstrated their availability to care for the Children and to make appropriate child-care arrangements when they are unavailable to care for the Children. Both parties mainly use relatives, like grandparents, aunts, and uncles [] to provide child-care for the Children.

13. The level of conflict between the parties and the willingness and the ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party. The level of conflict between the parties is relatively low in that they are not violent or excessively harassing toward each other. However, because of their personality conflicts and their ability to push each other's buttons, their willingness and ability to cooperate with one another has been significantly diminished. Both parties will benefit from co-parent counseling.

14. The history of drug or alcohol abuse of a party or a member of a party's household. Neither party has been shown to have a problem with drug or alcohol abuse. Mother's husband, [J.W.], had a DUI from 2007. The [c]ourt held a risk of harm hearing

on August 5, 2013 and found [J.W.] to not pose a risk of harm to the Children.

15. The mental and physical condition of a party or member of a party's household. Both parties and the members of their households are in good mental and physical health.

16. Any other relevant factor. The [c]ourt notes that Father has his struggles with co-parenting; however, the previous failures in the parties' co-parenting relationship is the product of both Father and Mother's conduct. Surely, Father has his eccentricities such that he tends to complicate simple issues, make issues out of non-issues, and has a habit of talking down to Mother. On the other hand, Mother makes unilateral decisions regarding the Children without consulting Father, such as signing [M.E.H.] up for Boy Scouts in a non-convenient location, signing both Children up for summer camp, and making non-emergency medical decisions without telling Father. She admittedly engages in passive aggressive behavior to avoid having to deal with Father. The [c]ourt notes both parties' struggles in the co-parenting relationship, which is why the [c]ourt has previously ordered co-parenting counseling for the express purpose of "improv[ing] communication between the parents . . . and to reduce the antagonism and animosity between the parents."

Thankfully, and to the credit of both parents, the parties have shielded their Children from their co-parenting struggles. Further, the parties do not have extended verbal or physical altercations – the extent of their conflict is derogatory statements and passive aggressive behavior. When considering the spectrum of parental feuds in the arena of child custody, the parties' conflicts with each other are moderate. The [c]ourt finds that a shared custody schedule[] is most appropriate because both parents have demonstrated that they are fit parents who seek to be involved in their Children's lives.

Trial Court 1925(a) Opinion, August 25, 2015, pp. 6-13 (record citations omitted). Based on its assessment of the 5328(a) factors, the court concluded:

> Under the presumption that a shared custody schedule is appropriate in a situation where the Children have two fit, loving parents and operating within the confines of the Children's stated preference to not feel like they are constantly going back and forth between their parent's [sic] homes, there are few options available logistically to maximize the Children's time with both parents without shuffling them between Mother and Father's homes.
>
> Father testified that he has suitable childcare options for the times when he has custody of the Children but has to work; either the paternal grandparents or the Children's stepmother will watch the Children at Father's residence. On his work days, Father will be able to see the Children before school and during the days in the summer and other breaks when the Children are not in school during the day. The Children will be able to develop meaningful relationship[s] with both sides of their families at their parent's [sic] respective homes. Upon consideration of these statutory factors, the [c]ourt finds that it is in the best interests of the Children for Mother and Father to share legal and physical custody of the Children.

*Id.* at 13.

Mother's issues challenge whether the trial court abused its discretion in continuing shared physical custody instead of granting the modification petition to award her primary physical custody. *See* Mother's Brief, at 17. In her first and second issues, Mother contends that the trial court inadequately considered section 5328(a)(7) and section 5328(a)(12) in its opinion. *See id.* at 18-22. In her third, fourth, and fifth issues, Mother complains that the trial court failed to address sections 5328(a)(1), (6), and (13), respectively. *See id.* at 23-29.

A review of the trial court's reasoning *supra* reveals the trial court considered each of the factors Mother alleges the court either failed to

address or inadequately addressed. In short, the trial court concluded that the complained-of factors did not weigh heavily in favor of either Mother or Father.[4]

We find the trial court adequately considered all the required section 5328(a) factors. Further, we find ample, competent evidence in the record to support the trial court's decision regarding the equal shared custody arrangement. Thus, we find no error of law or abuse of discretion.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn, Esq._
Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/7/2015

---

[4] Specifically, as to 5328(a)(1), the trial court reviewed testimony regarding the parties' specific co-parenting deficiencies, but concluded "[n]either party has withheld the [C]hildren from the other party[,] and [each has] demonstrated a history of encouraging frequent and continuing physical contact of the other party with the Children." Trial Court 1925(a) Opinion, August 25, 2015, pp. 6-7. As to 5328(a)(6), the Children's sibling relationships, the trial court acknowledged the Children's baby half-brother, as well as Father's testimony that he believes the Children should develop meaningful relationships with both sides of their family, in determining that this factor weighed in favor of shared custody with equal time spent at each parent's residence. **See id.** at 8. Regarding section 5328(a)(7), the child's well-reasoned preference, the trial court noted that the Children's only real preference was to avoid being moved between residences multiple times a week, and accordingly a shared custody schedule on a week-on/week-off basis was appropriate. **Id.** at 9. The trial court did not view either of the factors contained in section 5328(a)(12) or (a)(13) as favoring either parent. **Id.** at 11.